

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00320-CV

**IN THE INTEREST OF I.V.B.**

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-PA-01118
Honorable Richard Garcia, Associate Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
Rebeca C. Martinez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  July 23, 2014

AFFIRMED

Appellant David B. appeals the trial court's order terminating his parental rights to his daughter I.V.B., arguing that termination of his parental rights is not in I.V.B.'s best interest. We affirm.

## BACKGROUND

On May 8, 2013, the Department of Family and Protective Services filed an original petition for protection of a child, for conservatorship, and for termination in a suit affecting the parent-child relationship, seeking conservatorship of two-year-old I.V.B. and her five-year-old sister, M.R.G. The petition sought termination of the parent-child relationship between I.V.B. and her parents, Taryne B. and Appellant David B. The petition also sought termination of the parent-child relationship between M.R.G. and her parents, Taryne B. and William G. The affidavit

attached to the petition affirmed that on May 6, 2013, the Department received a referral alleging neglectful supervision of I.V.B. by her mother Taryne B. The affidavit affirmed that a tenant at I.V.B. and Taryne B.'s apartment complex reported that I.V.B. had fallen from the third-floor window of I.V.B. and Taryne B.'s apartment. According to the affidavit, a Child Protective Services Investigator contacted Taryne B. on May 7, 2013, and Taryne B. said her children had been playing in their room when M.R.G. started yelling that I.V.B. had fallen out of a window. Taryne B. ran downstairs and saw a man from the apartment complex carrying I.V.B. Taryne B. told the investigator that because I.V.B. was active and playing, and because Taryne B. was afraid CPS would be called, Taryne B. decided not to take I.V.B. to the emergency room. Taryne B. was afraid CPS would be called because in October 2012, the children had been removed from Taryne B.'s care because of her drug use, and David B. had been given custody of both children.[1] The children were not supposed to be living with Taryne B.

At the termination hearing, Taryne B. testified that she was voluntarily relinquishing her rights to I.V.B. and M.R.G. She testified that she cannot take care of her children. She also admitted that she had concerns if I.V.B. were returned to her father David B. Taryne B. testified about David B.'s addiction: "David's been drinking for a long, long time. He's – I don't see him changing at all. I have seen him for the past seven years, just as myself, it's taken a long time for both of us to get into the situation we are and it's going to take a long time for him to get the help, just as myself." Taryne B. testified that terminating David B.'s parental rights was in I.V.B.'s best interest. Taryne B. testified that she did not have confidence David B. could take care of I.V.B. Taryne B. testified that in October 2012, David B. was given full custody of both her children. Taryne B. admitted she was still using drugs at that time. According to Taryne B., even though it

---

[1] Although David B. is not M.R.G.'s father, he raised her as his own daughter. David B., however, did not officially adopt M.R.G. and does not have any parental rights with regard to her.

was not in the children's best interest for her to take care of the children, David B. gave the children back to her. Taryne B. testified that he did so because of his "job schedule" and his belief that the girls needed their mother.

Bobby Fears of the Department testified that the Department became involved in May 2013 when it received a call alleging neglectful supervision by Taryne B. Fears testified, "Her apartment complex reported some drinking during the day and [I.V.B.], the youngest, the three-year-old, f[alling] from a third-floor window." Fears testified that Taryne B. did not seek medical treatment for I.V.B. According to Fears, David B. had legal custody of the children at the time, and the children were not supposed to be under Taryne B.'s care. When asked why David B. had given the children back to Taryne B., Fears testified that David B. "stated that he felt the girls needed to be with their mother. And in addition to that, his job schedule interfered with his ability to care for the children." According to Fears, David B. said he believed the children should be with Taryne B. despite Taryne B. still using illegal drugs.

Fears testified that on March 25, 2014, two days before the termination hearing, he received a text from David B., who stated that he had had a relapse and was going to check himself into inpatient care. According to Fears, David B. had also relapsed on March 9, 2014. On March 9th, Fears received a call from Taryne B. who said she was with David B. near Corpus Christi, Texas. Taryne B. said David B. had been drinking all day and she was worried about his health. Fears told her to contact 911. According to Fears, Taryne B. did contact 911 and David B. was "placed in Bay View Behavioral Hospital for detox." Fears testified that he had had many conversations with David B. about how dangerous it is for him to be drinking around the children. Fears testified, "He always tells me that he is going to do better, [that] he understands his problems and that he is trying to change." As part of his service plan, David B. was ordered to complete drug or alcohol assessment and treatment. Fears testified David B. completed "the inpatient intake through Gulf

Coast Rehabilitative," which recommended "intensive inpatient therapy due to the extent of his alcohol issues." David B., however, "opted for outpatient treatment," which he completed in January 2014. According to Fears, David B. was "doing well completing services" until he relapsed in March 2014. Fears testified that David B. was out of compliance with his service plan.

According to Fears, David B. visited the children on and off. His last visit was in December 2013, and he had not visited the children since then. Fears testified that it was in the best interest of I.V.B. to terminate David B.'s parental rights because the "history of CPS involvement centers around drug use and [David B.]'s issues." Fears also criticized David B.'s "decision-making process." Fears testified that David B. placed the children at risk for future abuse and neglect. Fears was concerned that if David B. regained custody of the children, he would once again place them back with Taryne B. Fears testified that "everyone involved in the drug therapy" programs believes Taryne B. "is his major trigger." Fears testified he had concerns "about their continued contact."

The attorney ad litem for the children also testified about David B. giving the children back to Taryne B. even though they had been removed from her care. According to the attorney ad litem, Taryne B. said David B. gave the children back to her because he was overwhelmed with caring for them. The attorney ad litem testified that "[t]his family has a very extensive history, not just from this case, but prior cases with CPS." The attorney ad litem also testified that David B. admitted to drinking heavily.

David B. testified via telephone from a rehabilitation facility. He said that the next step was a twenty-eight day stay in an intensive inpatient rehabilitation facility. He agreed that alcohol was the main issue in this case and that Taryne B. was his "trigger." He testified that he had been employed during the entire case and had stable housing. David B. testified he was "asking for more time to get [his] life straightened out." He testified that when he gave the children back to Taryne

B., he had not been in contact with the Department "and had no reason to believe that her case was still open." He claimed that if he had known the case was still open, he would not have returned the children to her. He also claimed that he did not know Taryne B. was still using illegal drugs. On cross-examination, David B. testified that he was given custody of the children because of Taryne B.'s drug use and admitted that Taryne B. did not complete any drug treatment. With regard to why he had not visited the children on a routine basis, he testified he was not able to do so because of his "work situation."

After hearing all the evidence, the trial court terminated David B.'s parental rights to I.V.B., finding that (1) David B. had knowingly placed or knowingly allowed I.V.B. to remain in conditions or surroundings that endangered her physical or emotional well-being; (2) he engaged in conduct or knowingly placed I.V.B. with persons who engaged in conduct that endangered I.V.B.'s physical or emotional well-being; (3) he failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of I.V.B. who had been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of I.V.B.'s removal from the parent for abuse or neglect; and (4) he constructively abandoned I.V.B. The trial court also found that termination of the parent-child relationship between David B. and I.V.B. was in her best interest.

### TERMINATION OF PARENTAL RIGHTS

Parental rights may be terminated only upon proof of clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(1) of the Texas Family Code, and (2) termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001 (West 2014). On appeal, David B. challenges the best-interest finding, arguing the evidence is legally and factually insufficient.

When the legal sufficiency of the evidence is challenged, we look at all the evidence in the light most favorable to the trial court's finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* (citation omitted). "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (citation omitted). "If, after conducting its legal sufficiency review of the record evidence, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient." *Id.* at 344-45 (citation omitted).

When a parent challenges the factual sufficiency of the evidence on appeal, we look at all the evidence, including disputed or conflicting evidence. *Id.* at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (citation omitted); *see also In re A.B.*, No. 13-0749, 2014 WL 1998440, at *3 (Tex. May 16, 2014). In reviewing termination findings for factual sufficiency, we give due deference to the factfinder's findings and do not supplant its judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006); *see In re A.B.*, 2014 WL 1998440, at *3 (explaining that while there is a heightened standard of review in parental termination cases, a "court of appeals must nevertheless still provide due deference to the decisions of the factfinder, who, having full opportunity to observe witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of witnesses").

Here, David B. argues the evidence is legally and factually insufficient to support the trial court's finding that termination of David B.'s parental rights is in I.V.B.'s best interest. When the court considers factors related to the best interest of the child, "the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a) (West 2014). And, in determining whether the child's parents are willing and able to provide the child with a safe environment, the court should consider the following:

- the child's age and physical and mental vulnerabilities;

- the frequency and nature of out-of-home placements;

- the magnitude, frequency, and circumstances of the harm to the child;

- whether the child has been the victim of repeated harm after the initial report and intervention by the Department or other agency;

- whether the child is fearful of living in or returning to the child's home;

- the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

- whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

- whether there is a history of substance abuse by the child's family or others who have access to the child's home;

- whether the perpetrator of the harm to the child is identified;

- the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

- the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

- whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with (1) minimally adequate health and nutritional care; (2) care, nurturance, and appropriate discipline consistent with the child's

physical and psychological development; (3) guidance and supervision consistent with the child's safety; (4) a safe physical home environment; (5) protection from repeated exposure to violence even though the violence may not be directed at the child; and (6) an understanding of the child's needs and capabilities; and

- whether an adequate social support system consisting of an extended family and friends is available to the child.

*Id.* § 263.307(b).

In addition, courts may consider other nonexclusive factors in reviewing the sufficiency of the evidence to support the best-interest finding, including (1) the desires of the child, (2) the present and future physical and emotional needs of the child, (3) the present and future emotional and physical danger to the child, (4) the parental abilities of the persons seeking custody, (5) the programs available to assist those persons seeking custody in promoting the best interest of the child, (6) the plans for the child by the individuals or agency seeking custody, (7) the stability of the home or proposed placement, (8) acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate, and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976).

In his brief, David B. argues that "[m]any of the factors set out in *Holley v. Adams* were ignored by the court at trial." He argues that there is no evidence in the record of the following factors: (1) the emotional and physical needs of I.V.B. now and in the future; (2) the parental abilities of the individuals seeking custody; (3) the emotional and physical danger to I.V.B. now and in the future; and (4) the parental abilities of the individuals seeking custody. However, the list of factors set out in *Holley v. Adams* is not exhaustive, and evidence is not required on all of the factors to support a finding terminating a parent's rights. *Holley*, 544 S.W.2d at 372; *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Indeed, evidence supporting only one *Holley* factor may be sufficient to support the termination of an appellant's parental rights. *See In re O.N.H.*, 401 S.W.3d 681, 683 (Tex. App.—San Antonio 2013, no pet.).

Further, evidence that the parent has committed the acts or omissions prescribed by section 161.001 of the Family Code may also be probative in determining the child's best interest. *Id.* at 684. But, the mere fact that an act or omission occurred in the past does not *ipso facto* prove that termination is currently in the child's best interest. *Id.* "However, it is proper to measure a parent's future conduct by his or her past conduct to determine whether termination is in the child's best interest." *Id.*

In considering the above factors, we note that David B. testified that he had stable employment and had a long-term residence. However, there was also evidence that David B. could not provide a *stable* home. David B. is a heavy drinker who relapsed multiple times during the pendency of this case and at the time of the hearing was admitted into a rehabilitation facility. There is also evidence of his and Taryne B.'s past history of alcohol and drug abuse. Fears testified that the family had a "history of CPS involvement," which centered around Taryne B.'s drug use and David B.'s alcohol problems. Taryne B. testified that David B. had been drinking "for a long, long time" and that she did not believe he could change. She did not have confidence that David B. could take care of I.V.B.

The evidence shows that because of Taryne B.'s illegal drug use, David B. was granted custody of I.V.B. in October 2012. There is also evidence that despite knowing about Taryne B.'s continued drug use, he returned I.V.B. to her mother because (1) he was overwhelmed with taking care of I.V.B. and her sister, (2) his work schedule did not permit him to take care of I.V.B. and her sister; and (3) he believed the children should be with their mother. The result of this decision by David B. was I.V.B. falling out of a three-story window. There was also evidence that during the pendency of this case, David B. suffered at least two relapses with his alcohol addiction. At trial, David B. admitted he was not able to currently take care of I.V.B. Fears testified that David B. placed the girls at risk for future abuse and neglect. Fears believed that if David B. regained

custody of I.V.B., he would once again place her with Taryne B. There is thus evidence that David B. does not demonstrate adequate parenting skills to take care of I.V.B., who is currently only three years-old. David B.'s decision to return I.V.B. to Taryne B. led to circumstances that resulted in I.V.B. falling out of a three-story window. He placed the children at risk to injury by leaving them with Taryne B. All the above is also evidence that David B. lacks the ability to provide for the emotional and physical well-being of I.V.B. and that he cannot provide for the emotional or physical safety of I.V.B. We therefore hold that the evidence is legally and factually sufficient to support the trial court's best-interest finding.

We affirm the judgment of the trial court.

Karen Angelini, Justice